**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

**In re Proceedings for the REORGANIZATION OF A RAILROAD.**

**No. 70–347.**

United States District Court, E. D. Pennsylvania.

July 29, 1974.

Hermon M. Wells, Philadelphia, Pa., for the Trustees, Penn Central Trans. Co.

O'Donnell & Schwartz by Michael Klein, New York City, for Transport Workers Union of America, AFL–CIO.

Gratz, Tate, Spiegel, Ervin & Ruthrauff by Mercer D. Tate, Philadelphia, Pa., for Richard Joyce Smith, trustee, New York, New Haven & Hartford RR. Co.

## MEMORANDUM AND ORDER NO 1637

FULLAM, District Judge.

On the Penn Central, carmen are classified in six different categories. On most other railroads throughout the nation, there are only two such categories, freight carmen and passenger carmen.

Before the merger of the New York Central and Pennsylvania Railroads, carmen on the New York Central were paid at the same rate as carmen on the other railroads throughout the country. On the Pennsylvania Railroad, however, Class F carmen were paid one-cent per hour more than carmen on other railroads in the equivalent category. After

the merger, the one-cent per hour differential was maintained for all Penn Central carmen.

During 1971, negotiations were under way between Penn Central and the TWU, representing Penn Central carmen. The parties had agreed upon and initialed a collective bargaining agreement calling for certain increases in compensation over the next two years. The agreement had not been formally ratified, however, when it came to the attention of Penn Central that other shop craft unions, whose negotiations were being conducted on a national basis, rather than separately for each railroad, had achieved a contract calling for greater increases in compensation than were provided by the initialed agreement. This would create disparity among employees working side-by-side, to the disadvantage of the employees represented by TWU. Accordingly, Penn Central suggested to TWU that, in lieu of the agreement which had already been preliminarily approved, an agreement including the same increases in benefits as were provided in the national agreement for other crafts should be entered into. Needless to state, the union readily agreed, and the agreement here in question was promptly ratified and became effective.

It appears that the persons handling the actual negotiation and consummation of the agreement between TWU and Penn Central did not focus upon the question of whether the one-cent per hour advantage in favor of Penn Central's carmen, versus carmen on other railroads, was to be preserved in the substituted, more advantageous, agreement. Since the substituted agreement provided greater wage increases than had been provided for in the agreement already preliminarily approved, this is perhaps not surprising.

From the standpoint of Penn Central, the purpose of the substitution was to prevent the carmen on Penn Central from being paid less than other crafts working in the same shops; it is clear on the record that Penn Central did not intend to agree to pay the extra one-cent per hour. It is also clear on the record that the responsible negotiators for the TWU were aware, before the substituted contract was ratified and approved, that it did not include the extra one-cent per hour. The most that can be said is that the union negotiators regarded this as an inadvertent oversight, and assumed that it would be corrected. It is alleged that this assumption was based upon earlier statements by Penn Central officials, not to the effect that the one-cent per hour differential was to be maintained, but to the effect that the substituted contract being tendered provided for identical increases as were provided in the "national handling" agreement for other crafts.

The principal difference between the October 1971 Penn Central agreement which had been tentatively approved, and the "national handling" model was that the latter included an extra step increase. The latter had a provision for preserving the existing differential between freight carmen and passenger carmen. If this provision had been inserted in the new Penn Central agreement, it would have provided a basis for a contention that the one-cent per hour differential would be maintained. However, that provision was not included, on the theory that it was not directly applicable to the Penn Central situation, because Penn Central's carmen were classified in six categories rather than two. The Penn Central official who made the alleged representation to the union was not aware of this discrepancy (if it can properly be so characterized); his superiors did not regard it as a discrepancy, and definitely did not authorize him to offer the union a contract which would require payment of the additional one-cent per hour under the new contract.

The union has petitioned for "reformation" of the new 1971 agreement which was finally ratified and approved, on the theory that the failure to preserve the one-cent per hour differential between Penn Central carmen and the carmen on the other railroads was the

876

result of mutual mistake. The petition was filed in February of 1972, but neither party requested a hearing until recently; the petition was heard on July 26, 1974.

Under the circumstances outlined above, it is clear that there is no basis for reformation of the contract. In the first place, when the agreement was ratified, both parties were aware that it did not preserve the one-cent per hour differential. An assumption by one party that a contract will be modified does not amount to a mutual mistake of fact. Indeed, it does not even amount to a unilateral mistake of fact. Moreover, reformation of an agreement to correspond to the true intent of the contracting parties cannot extend to inserting in the contract a provision which was clearly not intended by one of the parties. The petition will be denied.

## ORDER NO. 1637

And now, this 29th day of July, 1974, it is ordered that the petition of Transport Workers Union of America, AFL–CIO to reform its agreement with the Debtor, Penn Central, dated November 9, 1971 (Document No. 2625) is denied.